STRONG *against* WHITE and another.

Where a testator bequeathed to his son *J. all his moveable property that he should die possessed of;* it was held, that a judgment debt, which existed in favour of the testator, at the time of his death, did not pass, by this bequest.

Judgment debts being *bona notabilia* in the state only where the judgments are rendered, the neglect of an executor in this state to inventory a debt founded on a judgment rendered in another state, is not a breach of his official duty.

But where an executor, by means of a suit brought in this state, upon a judgment rendered in another state, collected and applied to his own use a part of the amount due thereon; it was held, that it became his duty to account therefor to the court of probate here ; and for neglecting to do so, he became liable on his official bond ; and the damages should be the amount so collected, with interest.

THIS was an action on a bond, given by the defendants, executors of the last will and testament of *David White,* deceased, to the plaintiff's predecessor in office, as judge of probate for the district of *Chatham* in this state, in the form prescribed by law for executors.

The defendants, having prayed oyer of the bond and condition, pleaded performance generally.

The plaintiff, in his replication, assigned the following

breaches.   1. That the defendants, *James W. White* and
*David White* jun. coëxecutors of the last will and testament
of *David White* sen., had wholly neglected and refused to
make and exhibit to the court of probate any inventory
whatever of a certain debt or chose in action, due to the tes-
tator from *Michael Stewart* of *Portage* county in the state
of *Ohio,* by virtue of a judgment of the court of common
pleas for that county, rendered in *May* 1830, in favour of
the testator against said *Stewart,* for 277 dollars, 50 cents,
damages, and 8 dollars, 73 cents, costs of suit ; which judg-
ment debt was, at the time of the testator's death, of the
value of 600 dollars.

2. That *David White* jun., during his life, and the defend-
ant *James W. White,* the surviving executor, then and ever
since, had neglected to inventory said judgment debt ; but
had collected a large portion thereof, to a large amount, *viz.*
600 dollars, and wrongfully converted the same to his own
use.

3. That said *Stewart,* at the decease of the testator, was
indebted to him in the judgment debt aforesaid, by virtue of
said judgment of the court of common pleas in *Ohio ;* that
for a long time after the testator's decease, said *Stewart* was
insolvent and unable to pay said judgment debt, or any part
thereof, and therefore no inventory of said judgment debt was
made or exhibited to the court of probate, by said executors,
or either of them ; that after the death of *David White* jun.
*James W. White,* the surviving executor, brought a suit at
law, against said *Stewart,* upon said judgment, returnable to
to the county court of *Middlesex* county in this state, held
in *April* 1844; in which suit said *James W. White,* as exec-
utor, recovered judgment against *Stewart,* at the term of said
county court in *October* 1844, for 526 dollars, 27 cents, dam-
ages, and 10 dollars, 68 cents, costs of suit ; that an execu-
tion issued on such judgment was duly levied upon a tract
of land in *Chatham* in this state, containing about twenty
acres, then owned by said *Stewart,* which land was set off
to the execution creditor, at the appraised value of 403 dol-
lars, 12 cents ; and that said *James W. White,* as such exec-
utor, afterwards sold and conveyed said land, so levied upon
and set off to him, to some person or persons unknown to

the plaintiff, for a large sum, *viz.* 600 dollars, which sum said *James W. White* has converted and applied to his own use; and that said *James W. White* has, ever since the death of his coëxecutor, neglected to make or exhibit to the court of probate any inventory whatever, either of the judgment so recovered by him, or of the land set off to him in part satisfaction thereof, or of the balance due thereon, or of the proceeds of said land, to the end that said estate might be applied and disposed of according to the provisions of law, and of the last will and testament of the testator.

The rejoinder of the defendants set forth the will of *David White* sen., which was substantially as follows: "First, I devise to my oldest son, *David White* jun., a lot of land in *Wongunk* meadow, containing about one and a half acres, with the dwelling-house and barn standing on the same; also one other piece of land in the meadow, containing one acre and forty rods; one other piece of meadow, called the *Brick* meadow, containing, by estimation, seven acres; one other lot, called the *Meadow* pasture, containing seven acres; one other piece, called the *Bacon* lot, containing eleven acres and sixty rods; one other piece of land, called the *Lee* lot, and supposed to contain six or seven acres; one other piece of wood-land, containing three acres; one other piece of wood-land, at *Mesomesick,* containing eleven acres, three roods and five rods; also all my right in lot No. 6., in said *Mesomesick* division, and supposed to be thirteen acres on one half of said No. 6., exclusive of the six acres my said son bought of *Reuben Abbey.* The foregoing property is not to be subject to my widow's thirds, if she outlives me.

" I give and devise to my son *James Wells White* my home-lot, with all the buildings thereon standing, containing about eleven acres; one piece of meadow land, called the *Point,* containing four acres and one rood; also nine acres on the *North* side of my upper meadow lot; also one other lot of land, called the *South* end, supposed to contain sixteen acres; also the *East* end of the lots No. 17 and 18, in *Mesomesick* division, containing by estimation twenty-two acres. I also give to my son *James* my right in *Parsonchoag* fish-place, which is one fourth part.

" I also give to my said son all my moveable property that I shall die possessed of, except my library, and what the law

would give to my wife, if she should outlive me, on condition that he support and take care of me and his mother, in sickness and in health, and provide all necessaries, pay all doctor's bills, funeral charges, and erect decent monuments at our graves.

"My will is, that the real property given to my son, *James*, and what I have reserved to pay my debts, be subject to my widow's thirds, in all my estate, and none taken from what I have given to my son, *David*.

" I give to my wife, *Mary White*, what the law allows to widows out of my personal and real estate, after my just debts are paid.

" I give to my daughter, *Anne Shepherd*, the wife of *Silas Shepherd*, one hundred dollars, (besides what I have given to her and her husband heretofore,) to be paid to her, or her children, if she is not living, by my executor, in one year after my decease.

" I give to my grand-children, *Henrietta, Sally, Sidney, William, Mortimer, Ward*, children of my daughter, *Sally Ward*, twenty dollars each, besides what I gave to their mother, and a debt their father owed Capt. *Cheney* of about fifty dollars, to be paid to them, by my executors, in one year after my decease.

" My will is, that all the estate that I shall die possessed of, that I have not given away, by the foregoing will, be disposed of, to pay my just debts, by my executors; and if any remains, to be divided between my two sons, *David* and *James*, but *David* to have one hundred and fifty dollars less than *James*, on account of my paying that sum for furniture for his daughter *Harriet*: Also, my library to be divided between them, except they agree to sell it to pay my debts. And my will is, that if either of my sons shall pay any of my debts before my death, and shall produce evidence thereof, they shall be allowed the same as though my other creditors brought them in. And I do appoint my two sons, *David White* junior, and *James Wells White*, my executors to this my last will and testament.

" Dated at *Chatham*, this 22d day of *March*, 1826."

The defendants then averred, that according to the true intention of the testator, and the true meaning and construction of said last will and testament, the judgment against *Michael*

*Middlesex,*
July, 1848.
———————
Strong
*v.*
White.

*Stewart*, mentioned in the plaintiff's replication, was and is part of the moveable property of which the testator died possessed, and which, in and by said last will and testament, he bequeathed to said *James W. White*, on condition that he should support the testator and his wife, &c. ; that said *James W. White* performed said condition, and in performing the same, expended a large sum, to wit, 1,000 dollars ; that by reason of the premises, said *James W. White* became the purchaser of said judgment, and is entitled to the fruits thereof ; that all the claims of creditors against the estate of the testator, and all other charges and expenses of every description against his estate, have been fully paid and discharged ; and that the plaintiff is pursuing this action for the use and benefit of the children and heirs at law of *David White* jun.

The plaintiff, in his surrejoinder, denied, that according to the true intention of the testator, and the true meaning and construction of his last will and testament, said judgment against *Michael Stewart*, was or is a part of the moveable property, of which the testator died possessed ; or that said *James W. White*, although he might have performed said condition, in the manner alleged in the rejoinder of the defendants, became the purchaser of said judgment, or entitled to the fruits thereof.

To this surrejoinder there was a general demurrer.

The case was reserved for the advice of this court as to what judgment ought to be rendered.

*Barnes*, for the defendants, after remarking, that this suit is prosecuted, not for the benefit of creditors, but of claimants under the will, whose rights depend upon a fair construction of the instrument, contended, 1. That by the terms of the will, *James W. White* is entitled to all the moveable property, which the testator possessed, at his decease, except his library and the legal share of the widow. This is evident, in the first place, from the terms of the bequest. When the testator bequeathed *all his moveable property*, what did he intend to give ? The word *property*, standing by itself, includes every thing, which can be the subject of acquisition. It is synonymous with *estate*. 1 *Bla. Com.* 138. 2 *Bla. Com.* 103. 1 *Sw. Dig.* 74. The word *moveable*, applied as an

epithet to estate or property, is equivalent to the word *personal*. 2 *Bla. Com.* 384–387. 3 *Bla. Com.* 144. 2 *Kent's Com.* 340. 1 *Sw. Dig.* 168. If the testator had bequeathed all his personal estate, there could be no doubt that he intended to convey every thing of a personal nature. And why should any doubt exist in regard to his intention, when he has used words, which are precisely equivalent, in legal contemplation, to *personal estate?*

If the testator had bequeathed *all his moveables* simply, the question might be different. There would be room to argue that he did not intend to comprehend the judgment in dispute. But the language, which he has in fact employed, seems to render all argument superfluous. 7 *Pothier* 415, 416. (*a*)

A judgment is property in a chose in action reduced to possession ; and consequently, the testator, at the time of his decease, was possessed of the judgment. 2 *Bla. Com.* 436–439.

Secondly, the other provisions of the will sustain the construction, for which the defendants contend. No part of the personal estate, excepting one half of the library, is given to *David White* jun.; but he has a large share of the real estate ; and this, by way of compensation. is expressly exempted from dower. The real estate given to *James W. White*, and the real estate reserved for payment of debts, are charged with dower ; and the personal property bequeathed to *James*, is burthened with a condition, which is not imposed on any other legatee. Now, it is a clear principle, that a legacy should, if possible, never be construed in such a manner as to convert it into a *burthen* to the legatee. But such would be the direct consequence of restricting the legacy of all the moveable property to moveables only.

By fulfilling the condition, *James W. White* became a purchaser of the personal property. The actual plaintiffs cannot contest his right, or insist that he shall account for that

(*a*) " Lorsque je lègue mes biens meubles, ou mes effets mobiliers, ce legs comprend toutes les choses mobilières, tant incorporelles que corporelles, et généralement tout ce qui n'est point immeuble.

" Mais lorsque je lègue mes meubles, le legs ne comprend que les choses qui servent à meubler mes maisons, soit à la ville, soit à la campagne : les marchandises, l'argent comptant, les billets, n'y sont pas compris." 7 *Pothier*, 415, 416. [Treatise on Wills.]

which is strictly his own, not merely by gift, but by the assumption and performance of the condition annexed to the gift.

Thirdly, the intention of the testator, deduced from the tenor of the *whole* will, is clearly in favour of the claim of the defendants; and this intention, being neither unlawful, nor inconsistent with the rules of law, must prevail. 4 *Kent's Com.* 534.

2. That if *James W. White* was guilty of a wrong in omitting to inventory the judgment in controversy, the co-executor, *David White* jun., was equally guilty of that wrong. And shall his representatives, the actual plaintiffs in this cause, be permitted to derive a benefit from the wrong of their ancestor? To allow them to do this, would be to sanction one of those perversions of the rules of pleading, which they were intended to prevent.

*Ingham* and *Spencer,* for the plaintiff, insisted, 1. That *James W. White,* under the will of *David White* sen., was not entitled, as legatee, to the judgment debt against *Stewart* in *Ohio.* In the first place, the construction is to be according to the common and literal sense of the words employed. 1 *Sw. Dig.* 229. *McCartee* v. *Orphan Asylum Society,* 9 *Cowen,* 437. Taking the words *moveable property* in this sense, they clearly do not embrace a judgment debt.

Secondly, it is manifest from the *context* of the will, that it was not the testator's intention to bequeath a judgment debt, by those words; but only the stock, tools, &c., which would naturally accompany the homestead.

Thirdly, if the words in question have a technical meaning as extensive as the defendants claim; yet it is not necessary to violate the obvious intention of the testator to give them the full effect of such a meaning.

Fourthly, if there is any doubt in the words, the will is to be so construed as to favour the application of personalty to the payment of debts. *Seaver* v. *Lewis* & ux. 14 *Mass.* 83.

Fifthly, the legacy is of moveable property *in possession* of the testator. But this judgment debt was a chose in action not reduced to possession.

Finally, the words used in the will have not, even technically, the effect to pass this debt. There is no authority to

*Middlesex,*
July, 1848.

Strong
*v.*
White.

that effect. On the other hand, it is expressly laid down to the contrary, in 2 *Com. Dig.* 661. (*Ham.* ed.) *tit.* Chancery. 3 Y. 7. where *Jon.* 225. is cited ; and in 2 *Fonb. Eq.* 341, 2.

2. That if the construction claimed by defendants were conceded ; yet as there has been a breach of the bond, in neglecting to inventory the debt in question, the plaintiff is entitled to recover nominal damages. *Edwards* v. *White,* 12 *Conn. R.* 38.

STORRS, J. The principal question in this case, is, whether the bequest to the defendant, *James W. White,* of the testator's " moveable property," embraced the judgment against *Stewart.*

The law attaches no technical or artificial meaning to that phrase ; and we must therefore construe it according to its ordinary signification, unless there is something in the other parts of the will, which shows, that the testator intended to use it in a different sense. But we find nothing elsewhere in that instrument, which sheds any light on the subject in this respect. The popular meaning must therefore prevail. The adjective *moveable,* applied to property, signifies, in its ordinary and proper sense, that which is capable of being moved, or put out of one place into another. It therefore necessarily implies, that such property has an actual locality, and is susceptible of locomotion, or a change of place. But this is predicable of that only which is corporeal and tangible. A judgment is obviously not of this character ; since, like other choses in action, it is, in its nature, incorporeal, and therefore has no real locality ; although, as we shall hereafter have occasion to perceive, judgments sometimes have, in contemplation of law, for certain purposes, (not applicable to the point now before us,) a fictitious or imaginary locality assigned to them, and are deemed to exist in a particular place.

It is however insisted, that the word *moveable,* applied as an epithet to property, is equivalent to the word *personal :* and in support of this claim, we are referred to *Blackstone.* This position, however, so far from being supported, is discountenanced by that writer. In his chapter describing the nature and kinds of personal property, (2 *Comm.* 383.) he commences, by stating, that " under the name of things per-

sonal, are included all sorts of things moveable, which may attend a man's person wherever he goes:" and he subsequently adds : " But things personal, by our law, do not only include things *moveable*, but also something more ; the whole of which is comprehended under the name of *chattels*." He then proceeds to show, that this last term signifies not only goods or moveables, but *whatever was not a feud*, and adds : " It is in this latter, more extended, negative sense, that our law adopts it : the idea of goods or moveables only, being not sufficiently comprehensive to take in every thing that the law considers as a chattel interest." From this passage it is quite plain, that he did not deem the phrases *moveable property* and *personal property* to be equivalent ; but, on the contrary, that he considered *moveable* property to be only one of the several species of *personal* property.

When Judge *Blackstone,* speaking of what is included in personal property, mentions " *moveables* which may attend a man's person," &c. it is, we think, moreover, plain from the context and his subsequent enumeration, (on page 387.) of what he intended to embrace by that expression, that he used it in its literal, primitive sense, as indicating that particular species of personal property, which consists of tangible, corporeal, locomotive chattels, and not choses in action, to which it would apply only in an imaginary, artificial, legal sense : a chose in action having, as it is sometimes expressed, no *corpus*, but being a mere right, not *in* a thing (*in re,*) but *to* a thing, (*ad rem,*) and having, therefore, no actual locality : which right is indeed often evidenced by a written instrument, although such instrument does not constitute right itself, nor in any sense, the property therein. Indeed, those instruments, such as bonds, bills and notes, were not, at common law, the subjects of larceny, because they were not deemed to be of any intrinsic value. *Calye's* case, 8 *Co.* 33. 1 *Hawk. P. C. c.* 33. *s.* 55. 4 *Bla. Com.* 234. Nor do we find any case, in which they give a locality to the debts evidenced by them, so that those debts pass by a general bequest of property described as being situated in the place where those instruments happen to be. On the contrary, it is held, that a bill of exchange, mortgage, bond, or banker's receipt, do not pass, by a bequest of all the testator's property in a particular house, where those instruments are ; and the

reason given is, that bills, bonds, &c. are mere evidence of title *to things out of the house*, and *not things in it.* *Fleming* v. *Brooke*, 1 *Scho. & Lef.* 318. *Lambert* v. *Lambert*, 11 *Ves.* 607. So a bequest of *in-door moveables* has been held not to include notes and other choses in action. *Penniman* v. *French*, 17 *Pick. R.* 404. We cannot suppose, that Judge *Blackstone* intended to convey a different idea from that which we have imputed to him, by those general and casual expressions to which we have been referred, in other portions of his commentaries, which, although not perhaps critically exact, were sufficiently so, for the purpose for which he introduced them in that elementary work, but were not designed to have any reference or application to such a point as the one now before us. See 1 *Stephen's Com.* 156. 2 *Id.* 65. *part* 2. *ch.* 1. *Co. Litt.* 118. *b.* 1 *Atk.* 183. *Com. Dig. tit.* Biens. D. 2.

The same remark also applies to the quotations, which have been made, by the defendants, from other elementary writers.

We have looked in vain at the cases on the subject of devises, to find any judicial construction of the particular phrase " moveable property," used in the bequest here in question, either as connected or not with the other language of the will, in reference to the question whether choses in action are thereby embraced. In *Sparke* v. *Denne*, however, (*Wm. Jones' Rep.* 225.) is a determination upon the meaning of a bequest, the language of which is exactly synonymous with that phrase, and where, as in the present case, the construction of it was not aided by any other part of the will. The testator, in that case, after devising several pecuniary legacies to several persons, devised the residue "*of all my moveable goods and chattels*" to his wife. The question was, whether debts due on bond to the testator, at the time of his decease, passed by that bequest ; and it was held, after much argument and consideration, that they did not. The court say, that " by the devise of ' all my moveable goods and chattels,' *debts*, which are *jura*, [rights or choses in action,] are not devised." The words " *moveable property*," used in the devise before us, and the words " *moveable goods and chattels*," used in the devise in that case, are precisely equivalent, both phrases having relation to personal property. If, therefore, the bequest is restricted, by the word *moveable*, in one

*Middlesex, July, 1848.*

Strong
*v.*
White.

case, it must be in the other.   It is well settled, that a bequest of " all my goods and chattels," is sufficiently comprehensive to embrace every species of personal property, and consequently, choses in action; but it was there held to be restricted, by the term *moveable*, so as to exclude debts ; that word having been construed, according to its ordinary and proper meaning, as applying only to tangible personal property. This case, therefore, is in point ; and we find no other that is inconsistent with it.   If the bequest, in the present case, had been of all the testator's *moveables*, his intention to exclude debts due to him, would have been more palpable ; but it is difficult to distinguish that term, in meaning, from the phrase *moveable property*.   There are other cases, besides the one cited, which have some, although not such a particular bearing on the question before us, as renders it important for us to notice them.

We think, therefore, that the judgment against *Stewart* did not pass by the devise in question.

Judgment debts are *bona notabilia* in the state only where the judgments are rendered.   It therefore appertained solely to the proper tribunal of the state of *Ohio* to cause the judgment against *Stewart* to be administered upon there, as a part of the estate of *David White* sen.   For that purpose, the law imputes to it a locality within that jurisdiction, and not elsewhere.   The authorities are decisive on this point. *Cro. Eliz.* 472. 3 *Dyer*, 305. *a. in notis.*   3 *Bac. Abr.* 37, 8. *Toller*, 55.   1 *Wms. Saund.* 274. n. (3.)   *Slocum* v. *Sanford*, 2 *Conn. R.* 533.

In the case last cited, the law is thus stated by *Gould*, J. : " As to the *transmission* of personal chattels, by succession, distribution or bequest, the rule is, that they have no locality, but follow the law of the last domicil of the deceased owner. But with respect to the question of *probate jurisdiction*, the cases establish this distinction ; that debts by specialty or judgment have a temporary locality, but that those due by simple contract, have not.   The former are regarded as effects only at the place *where the securities are found*, at the death of the creditor ; the latter follow the person of the debtor, and are considered as effects in the jurisdiction in which *the debtor is, at the time, domiciled.*"

The executors of *David White* sen., therefore, were not

guilty of any breach of duty in not causing the judgment against *Stewart*, recovered in *Ohio*, to be inventoried here.

But when the defendant, *Joseph W. White*, one of those executors, after the death of his coëxecutor, by means of a suit brought here upon that judgment, collected a part of the amount due thereon, it became his duty to account therefor to the court of probate ; and for neglecting to do so, he became liable on his official bond, which requires him to account to that court for all the property of the testator, which should at any time come into his hands or possession.

[Here the judge stated the breaches assigned in the plaintiff's replication.]

The first breach assigned, regarding the neglect of the executors to inventory the judgment rendered in the state of *Ohio* against *Stewart*, constitutes, as we have seen, no violation of their duty, and indeed, is not relied upon, by the plaintiff. Whatever we might think as to the validity of the second breach, which we do not deem it necessary to consider, we are of opinion, that it sufficiently appears from the allegations in the third, that the said *James* has never rendered to the court of probate any account for what he received on the judgment recovered by him ; and that he is, therefore, liable on his bond. This breach is obviously framed somewhat inartificially. It seems to have been drawn up under a mistaken impression, that it was the duty of the surviving executor to exhibit to that court a technical inventory of the judgment recovered by him, or of its proceeds. But he alleges, that the executor had converted and applied to his own use the money received for the land set off to him under that judgment ; and we think, that, connecting that averment with the subsequent allegation of his neglect to exhibit an inventory, and construing the whole together, with reference to the subject matter, it may fairly be considered as amounting to a statement that he had unlawfully disposed of that money, and neglected to account for it to the court of probate. No special demurrer being interposed for want of form in the replication, we are not disposed to be very nice in regard to the construction of this part of the pleadings. We do not intend, however, to decide, whether the allegations in this breach would be held sufficient to subject the defendant for not rendering an account, in a case where a tech-

*Middlesex,*
*July, 1848.*

Strong
*v.*
White.

nical inventory is required.   A different question might be there presented.

The damages should be the sum received for said land, by said executor, with interest.

The superior court is advised to render judgment for the plaintiff accordingly.

In this opinion the other Judges concurred.

Judgment for plaintiff.