WINFIELD MILLER, Public Administrator, etc., Respondent, v. ABRAHAM S. HOOVER, Appellant.

Kansas City Court of Appeals, November 5, 1906.

1. ADMINISTRATION: Foreign Executor: Action. In Missouri, the letters of a foreign executor have no extra-territorial force and give him no title to property of the testator in the State and he can bring or maintain no action in his official capacity to recover such property.

2. ———: ———: ———: Tort: Judgment. But where such foreign executor has reduced the movable property to his possession and brought it into the State, he may sue in his own name to recover such property or for damages thereto; and so where the administrator recovers judgment in his own State and the judgment defendant moves within this State, he may sue on such judgment here.           \

3. ———: ———: Judgment: Situs: English Ecclesiastical Law. A creditor obtained a judgment in Virginia and the judgment debtor moved to Missouri. The judgment creditor died. *Held,* his administrator cannot maintain an action on the judgment in this State; but the proper probate court in this State may appoint an ancillary administrator, who may maintain an action on such judgment in this State since the *situs* of the judgment is in this State and the arbitrary distinction of the ecclesiastical courts of England between simple contract debts and specialties and judgments has not been adopted in this State.

Appeal from Ray Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

*J. P. Bramhall* and *Rust & Campbell* for appellant.

(1) The petition does not state a cause of action. It fails to show anything authorizing this suit to be brought by plaintiff. (2) Plaintiff's own testimony shows that neither the probate nor the circuit court of Ray county, Missouri, had any jurisdiction. Plaintiff proved himself out of court. (3) A judgment is local in its nature; and therefore must be administered on in the jurisdiction where rendered. Naylor v. Moffatt, 29 Mo. 126; Strong v. White, 19 Conn. 238; 2 Am. and Eng. Ency. Law (2 Ed.), p. 766; Gold v. Strode, 1 Car. 148; Croswell's Executors and Administrators, sec. 16, p. 44; McCarty v. Hall, 13 Mo. 480; Beers v. Shannon, 73 N. Y. 292; Schouler's Executors, sec. 24; 2 Woerner's American Law of Administration, sec. 309, p. 650; Ames Estate, 52 Mo. 293; Waples on Debtor and Creditor, 202. (4) Suit brought on this judgment in Missouri would have to be brought in the name of the owner of the judgment. Morton v. Hatch, 54 Mo. 411. (5) A satisfaction of this judgment would not protect appellant against a suit by the owner. (6) A judgment having a positive fixed situs, suit could not be brought on this judgment in Missouri until there was a properly certified copy in Missouri brought here by the real owner. It could not be administered on here, and therefore a suit on it by this administrator could not be maintained under any circumstances. (7) It was the duty of the Virginia administrator to administer on this judgment, and if he failed to do so, it could not be administered on in Missouri. "Judgment debts are *bona notabilia* only where the judgments are recorded." Strong v. White, 19 Conn. 248. All that could be done in Missouri would be for the owner to sue on it in his own name. Morton v. Hatch, 54 Mo. 411. (8) This plaintiff having been improperly appointed as shown by his own evidence, he cannot collect the assets. He cannot maintain this suit.

Lewis v. McCabe, 76 Mo. 307; Schouler's Executors and Administrators (2 Ed.), sec. 24; Wells v. Wells, 35 Miss. 638; Saurez v. Mayor, 2 Sandf. Ch. 173.

*George W. Crowley* and *Lavelock & Kirkpatrick* for respondent.

(1) Order of probate court appointing administrator not subject to collateral attack. (2) A cause of action, whether based on judgment, on contract, or on tort, in favor of a decedent at his death, or given by the statute on account of a wrongful act resulting in death, is an asset of the estate authorizing the granting of administration for the purpose of enforcing such demands; and the administration will be had where the demand may be enforced. Swancy v. Scott, 28 Tenn. 327; Becraft v. Lewis, 41 Mo. App. 546; Pinney v. McGregory, 102 Mass. 186; Stearns v. Wright, 51 N. H. 600; Morris v. Railroad, 65 Iowa 727; Hutchins v. Railroad, 44 Minn. 5; Finley v. Railroad, 106 Mich. 700; Schouler's Executors and Administrators, sec. 165, p. 222; Swancy v. Scott, 28 Tenn. 327.

JOHNSON, J.—J. C. Pittington recovered a judgment against defendant in the circuit court of Rockingham county, Virginia. A short time thereafter defendant moved to Missouri and ever since has resided in Ray county. Some years later Pittington died in Rockingham county and an administrator of his estate was duly appointed by the probate court of that county. This was followed by the appointment of an administrator by the probate court of Ray county and the present suit was brought by the latter administrator in the circuit court of Ray county to recover on the Virginia judgment. It is conceded that no assets of the estate exist in Missouri unless, for the purposes of administration, the Virginia judgment should be regarded as possessing a *situs* in Ray county, the home of the debtor. This was the view

taken by the learned trial judge who sustained the action and this appeal is prosecuted by defendant from the judgment recovered by plaintiff.

Whether the *situs* of the Virginia judgment is to be considered as being fixed at the place where the judgment was recorded, i. e., Rockingham county, or as following the person of the debtor, no action could be maintained in this State on that judgment by the Virginia administrator. It is a generally accepted rule that an executor or administrator appointed in one State cannot maintain an action in another State in his representative capacity.

The Supreme Court of the United States in the case of Wilkins v. Ellett, 108 U. S. 256, observed "that the reason for the rule is the protection of the rights of citizens of the State in which suit is brought and the objection does not rest upon any defect of the administrator's title in the property but upon his personal incapacity to sue as administrator beyond the jurisdiction which appointed him." [13 Am. and Eng. Ency. Law 948; Story on Conflict of Laws (8 Ed.), sec. 516; Richardson v. Busch, 198 Mo. 174, 95 S. W. 894. In this State the principle underlying the rule is differently stated. "The letters of the foreign executor have no extra-territorial force and give him no title to property of the testator in this State and he could not bring or maintain an action in his official capacity in this State to recover it. His title does not extend beyond the limits of the State of the testator's domicile and the movable property therein." [Naylor's Administrator v. Moffatt, 29 Mo. 126; Partnership Estate of Ames, 52 Mo. 290; Gregory v. McCormick, 120 Mo. 657; McPike v. McPike, 111 Mo. 216.]

But there are cases in which a foreign executor or administrator may maintain an action relating to the property of the decedent. Thus where he has reduced movable property to his possession and has brought it

into this State and has been wrongfully dispossessed thereof, he may sue in his own name to recover either the property or damages for its conversion without obtaining a grant of an ancillary administration. [1 Woerner on Am. Law of Adm., sec. 162.] And where the foreign administrator, as such, has recovered a judgment in the State of his appointment against a debtor of the estate and the debtor afterwards removes to this State the foreign administrator may sue in his own name on that judgment in the courts of this State. [Tittman v. Thornton, 107 Mo. 500; Hall v. Harrison, 21 Mo. 227.] But in such apparent, though not real, exceptions to the general rule it will be noted that the administrator had become vested with the full legal title to the property —was in fact the trustee of an express trust and, as such, could maintain an action relating to the property in his individual capacity. . This was the ground on which the action was sustained in Tittman v. Thornton, supra. "Michael Carroll could not prosecute a suit in this State as administrator appointed under the laws of Iowa, but, having recovered a judgment as administrator in that State, he may sue upon the same in this State in his individual capacity. His right to recover here does not depend upon profert of his letters of administration." [1 Freeman on Judgments (4 Ed.), sec. 217.]

In the present case the Virginia administrator, as an individual, could not have maintained an action in this State on the judgment recovered by his intestate against defendant. He was no party of record to that judgment and in order to prosecute an action thereon it would have been necessary for him to plead and prove his representative relation to it and this, under the general rule stated, would have been fatal to his right of recovery.

His disqualification to maintain such action being apparent, it remains to be seen whether an administra-

tor could be appointed in this State for that purpose. Defendant argues that an ancillary administration cannot be granted in this State without the existence therein of property belonging to the estate on which to administer, and this is true. He further argues that the Virginia judgment does not constitute property in this State, since the *situs* of that judgment is in Rockingham county, the place where it was recovered, and concludes that the probate court of Ray county was without jurisdiction to appoint an ancillary administrator: that plaintiff, as such, acquired no title to the judgment and therefore the action must fail.

The ecclesiastical courts of England, which had jurisdiction over the administration of the estates of deceased persons adopted during the common law period certain rules and principles for the purpose of avoiding conflicts among different diocesan courts over questions of jurisdiction. Among them was the rule that the authority of each court and its officers should not extend beyond its territorial limits, and this is the parent of the modern American rule that the grant of letters of administration in one State confers on the administrator no powers or rights that may be exercised beyond the State boundaries. Other rules prescribed the theoretical location of intangible property belonging to the estate. The *situs* of a simple contract debt due the estate was held to be at the place where the debtor resides at the time of the death of the creditor. [2 Woerner on Am. Law of Adm., sec. 309; Pinney v. McGregory, 102 Mass. 186.] That of a specialty, such as a bond or similar obligation, at the place where the instrument itself was located at the death of the decedent. And that of a judgment recovered by the decedent in his lifetime at the place where the judgment was recorded. [1 Woerner on the Am. Law of Adm. (2 Ed.), sec. 205; Smith, Adm'r, v. Bank, 5 Peters 518; Beers v. Shannon, 73 N. Y. 292; Strong v. White, 19 Conn. 238.] In this State

it has been held that simple contract debts due the estate are assets at the place where the debtor resides. [Becraft v. Lewis, 41 Mo. App. 546; McCarty v. Hall, 13 Mo. 480; Partnership Estate of Ames & Co., supra.]  But the distinction made between simple contract debts and specialties and judgments in the ecclesiastical law of England, though recognized in McCarty v. Hall, supra, has not been applied or adopted in this State and we perceive no reason why it should be.  It was an arbitrary rule established for the purpose of meeting the exigencies of a situation peculiar to the probate system of England in vogue during that period and therefore may be regarded as a mere local rule.  [Swancy v. Scott, 9 Humphreys (Tenn.) 327.]  To adopt it in our jurisprudence would logically lead to one of two conclusions.  Either that the judgment is not enforceable in this State at all or that the Virginia administrator may maintain an action thereon without an ancillary administration in this State.  The first of these would be predicated on the theory that because the judgment is assets in Virginia, it is not *bona notabilia* in Missouri and the Missouri administrator could acquire no title to it and therefore could not maintain the action and, as the Virginia administrator not being a party of record to the judgment would be compelled to sue in his representative capacity, his entire want of extra-territorial powers would disqualify him from maintaining an action in this State.  A conclusion so unjust cannot be tolerated especially when we consider that its foundation is nothing better than a local rule supported by a legal fiction.  The doors of the courts of this State should not be closed to a proper action for the enforcement of this unsatisfied judgment on such specious and immoral reasoning.

We have already found that the Virginia administrator is not the proper party to maintain the action. To permit him to exercise this right in his representa-

tive capacity would be to permit him to use the courts of this State and their processes to collect a debt due the estate and to withdraw to a foreign jurisdiction the proceeds realized without in any way providing for the protection of the rights of our own citizens, who may be creditors of the estate. And to permit him to sue in his individual capacity could be justified only on the theory that the judgment itself is a species of chattel and, as such, had been reduced to actual possession by the Virginia administrator and by him brought into this State for enforcement. To indulge in this hypothesis would permit a mere fiction relating to the theoretical *situs* of an incorporeal thing to override the settled policy of our law which has for its prime object the protection of the rights of our own citizens. The object of that policy will best be promoted by ignoring the distinction made between different classes of debts by the ecclesiastical lawyers and by adopting for the purposes of administration the common-sense doctrine that a debt due the estate of a deceased person from a debtor, who resides in a different State from that in which the creditor was domiciled at the time of his death, is an asset at the place where the debtor resides whether such debt be evidenced by simple contract, specialty or judgment recovered prior to the death of the creditor.

A judgment, for most purposes, is to be regarded as a new debt. [1 Freeman on Judgments (4 Ed.), sec. 217.] It destroys by merger the original cause of action, but substitutes a new obligation for the old. The real asset, which the owner of the judgment possesses, is not the record of the judgment, but the debt which it evidences and this being true, there can be no logical reason given for the view that in fixing the location of property for the purposes of administration a distinction should be made between a simple contract debt and a judgment debt. Though differently evidenced, both are contract debts, belong to the same species of intangible

property and should be governed by the same rules and principles.  [Swancy v. Scott, supra.]

In this view, the Virginia judgment was *bona notabilia* within the jurisdiction of the probate court of Ray county and that court could legally appoint an ancillary administrator, who, as the owner of the legal title to the judgment, could maintain this action.

Other questions raised have been considered and resolved against the contention of defendant.  We find the record free from error and it follows that the judgment must be affirmed.  All concur.