**SANER–RAGLEY LUMBER CO. et al. v. SPIVEY et al.** (No. 297–3582.)

(Commission of Appeals of Texas, Section A. March 15, 1922.)

1. **Executors and administrators** ⬅️519(1)— **Domiciliary administrator of nonresident takes no title while property subject to jurisdiction of local courts.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3235, providing that property of an intestate vests in his heirs, a domiciliary administrator takes no title to personal property of a nonresident having its situs in Texas so long as such property remains subject to the jurisdiction of the Texas courts.

2. **Descent and distribution** ⬅️5—**Succession to personal property governed by laws of domicile.**

As a matter of comity the laws of the domicile of a nonresident intestate control in the succession of movable or personal property.

3. **Executors and administrators** ⬅️519(1) — **Foreign administrator's title recognized subject to administration.**

The title of the foreign domiciliary administrator of a nonresident to assets in Texas is recognized to the extent that he is entitled to receive them after administration in Texas.

4. **Executors and administrators** ⬅️2—**Administration of nonresident's assets not governed by foreign laws.**

The state reserves to itself the right to control the procedure in the administration of assets of a deceased nonresident, unhampered by foreign laws.

5. **Executors and administrators** ⬅️519(1) — **Ancillary administrator has no title because of domiciliary appointment.**

Where the foreign domiciliary administrator of a nonresident takes out ancillary letters in Texas, he has no added powers because of his domiciliary appointment, and, under Ver-

---

non's Sayles' Ann. Civ. St. 1914, art. 3235, simply has possession of the property, and is vested with no title.

**6. Appeal and error ⬤➞334(4)—Heirs, and not foreign administrator, proper parties to be substituted when domestic administration not necessary.**

A foreign administrator of a plaintiff dying after judgment cannot sue or be sued in Texas, and is neither a necessary nor a proper party to the suit; and, under there is no necessity for administration in Texas, substitution of the legal heirs is sufficient, under Vernon's Sayles' Ann. Civ. St. 1914, art. 2088, requiring the petition in error to state the names of the parties adversely interested.

**7. Appeal and error ⬤➞334(4)—Appointment of administrator for deceased party cannot oust court of jurisdiction.**

Where the requirements of the statute with reference to jurisdiction had been complied with by naming a deceased party's heirs in the petition in error and bond long before the appointment of an administrator in another state, his appointment could not oust the court of jurisdiction.

**8. Executors and administrators ⬤➞12—Judgment debts have situs at debtor's residence.**

While, as respects intestate succession, it is the general rule that movable or personal property follows the residence of the owner, judgment debts are bona notabilia, and have their situs at the residence of the debtor.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by J. H. Spivey and others against the Saner-Ragley Lumber Company and others. Judgment for plaintiffs, and application for writ of error dismissed by the Court of Civil Appeals (230 S. W. 878), and defendants bring error. Reversed, and remanded to the Court of Civil Appeals, with directions.

Kimbrough, Underwood & Jackson, of Amarillo, C. L. Black, of Austin, P. R. Rowe, of Livingston, and Dean & Humphrey, of Huntsville, for plaintiffs in error.

Smith & Crawford and Oswald S. Parker, all of Beaumont, and Feagin, German & Feagin, of Livingston, for defendants in error.

SPENCER, P. J. J. H. Spivey sued Saner-Ragley Lumber Company, a corporation, and W. G. Ragley, in the district court of Jefferson county, Tex., for $75,000 damages alleged to have been sustained by virtue of an alleged breach of contract upon the part of the defendants. The defendants each filed a plea of privilege to be sued in Polk county, which was sustained, and the cause transferred to the latter county.

J. H. Spivey died intestate before the case was called for trial. Upon suggestion of his death, and upon the finding that an administration upon his estate was unnecessary, his legal heirs, who are among the defendants in error here, were made parties plaintiff. The defendants, plaintiffs in error here, filed no answer and made no appearance, and upon the case being called in its regular order on January 6, 1920, the plaintiffs, defendants in error here, having announced ready for trial, the court rendered judgment upon the evidence adduced in the sum of $75,000.

The term of court adjourned on January 10, 1920, without plaintiffs in error having filed a motion for new trial, or otherwise attacking the judgment. On January 29, 1920, an execution was caused to be issued and placed in the hands of the sheriff, who requested satisfaction of the judgment of the plaintiffs in error. This request was the first knowledge that the latter had that a judgment had been rendered against them, and, under an agreement between Ragley and the sheriff, the execution was held in abeyance until plaintiffs in error could perfect an application for writ of error.

On April 22d the latter filed their petition and bond for writ of error, and named as defendants in error in the writ and as obligees in the bond all the substituted plaintiffs appearing of record and also the firm of Smith & Crawford and Oswald S. Parker, who had been allowed a one-half interest in the judgment.

On January 19, 1920, Mrs. Fannie Spivey, one of the substituted plaintiffs, and mother of the original plaintiff, died intestate in Colquitt county, Ga., where she then resided. The fact of her death was not known to plaintiffs in error or their attorneys until the motion to dismiss the petition for writ of error, hereafter set forth, was filed in the Court of Civil Appeals; but the attorneys for the defendants in error had knowledge of her demise.

The Court of Civil Appeals found that, at the date of the filing of the petition for writ of error, there was no administration upon the estate of Mrs. Spivey pending anywhere; that on December 11, 1920, a temporary administrator of her estate was appointed by the proper authority in Colquitt county, Ga.; that on January 3, 1921, a temporary administrator of her estate was appointed by the probate court of Polk county, Tex.; and that all of her legal heirs were named as defendants in error in the petition for writ of error and as obligees in the bond.

On December 15, 1920, defendants in error filed the following motion in the Court of Civil Appeals:

"Defendants in error move to dismiss the writ of error because the Court of Civil Appeals has no jurisdiction of the case:

"First. Because the petition for writ of error names Mrs. Fannie Spivey as one of the

parties adversely interested, and at the time same was filed she was dead, and neither her heirs nor legal representatives are made parties.

"Second. Because the supersedeas bond is made payable to Mrs. Fannie Spivey as one of the obligees, and, she being dead at the time it was filed, the same is a nullity, and a valid bond is necessary to confer jurisdiction upon the Court of Civil Appeals."

In support of its motion to dismiss it was alleged and proved that Park's Annotated Civil Code of Georgia, in force at the date of the decease of Mrs. Spivey, reads as follows:

"Upon the death of the owner of any estate in realty, which estate survives him, the title vests immediately in his heirs at law. The title to all other property owned by him vests in the administrator of his estate for the benefit of the heirs and creditors." Section 3929.

The honorable Court of Civil Appeals in disposing of the case held: First, that the situs of the judgment followed the residence of the judgment creditor, and hence the title thereto vested upon the death of Mrs. Spivey in the Georgia administrator in virtue of the Georgia statute, and not in her heirs at law; and that, although the administrator had not been appointed at the time the writ of error was sued out, as the necessity for the administration existed, he would have to be appointed and made a party to the writ of error and an obligee in the bond before it could be said in contemplation of law (Vernon's Sayles' Ann. Civ. St. 1914, art. 2088) that all the parties adversely interested in the judgment were made parties to the writ and obligees in the bond. 230 S. W. 878.

There is a general rule of the common law to the effect that the domiciliary administrator takes title to all the personal property of the deceased wherever situated. This rule is thus stated in 20 Corp. Jur. p. 1118:

"The general rule is that the title of a domiciliary representative extends to all of decedent's personal estate wherever situated, although in some jurisdictions the title of the domiciliary representative is held to be limited to assets within the jurisdiction."

This rule is recognized in a general way by a number of the authorities cited in support of the text, notably Wilkins v. Ellett, 9 Wall. 740, 19 L. Ed. 586; Morrison v. Hass, 229 Mass. 514, 118 N. E. 893; Compton's Adm'r v. Borderland Coal Co., 179 Ky. 695, 201 S. W. 20, L. R. A. 1918D, 666; but in no case cited or found has the rule been applied when the effect of its application would be to defeat a statute of the foreign sovereign, or to deprive the latter of its inherent power over the estates of deceased persons, situate within its jurisdiction.

On the other hand, in cases in which the question has been directly in issue it has been emphatically declared by eminent jurists and able text-writers that letters of administration issued to domiciliary representative cast no title upon him to personal property outside of the jurisdiction issuing such letters. Barclift v. Treece, 77 Ala. 528; Cureton v. Mills, 13 S. C. 409, 36 Am. Rep. 700; Dial v. Gary, 14 S. C. 573, 37 Am. Dec. 737; Murphy v. Crouse, 135 Cal. 14, 66 Pac. 971, 87 Am. St. Rep. 90; Crohn v. Clay County State Bank, 137 Mo. App. 712, 118 S. W. 498; Story, Confl. of L., pars. 512, 524.

In Barclift v. Treece, supra, the court said:

"The letters of administration granted in South Carolina, the domicile of the decedent, have no extraterritorial operation. Without compliance with the provisions of our statutes, the foreign administrator has no authority to recover or to receive assets located in this state. Hatchett v. Berney, 65 Ala. 39. No title to the personal property situated here is cast on him or the distributees; and no arrangement between them for the distribution of the estate, including the bond sued on, can operate to defeat the title of the personal representative appointed in this state, or his right to recover the personal assets in this jurisdiction, or divest the domestic court of jurisdiction of the administration. * * *"

The Supreme Court of South Carolina, in Dial v. Gary, supra, said:

"Hence, in every state, we find laws declaring in whom such property within its limits, shall vest, and in what manner it shall be administered. True, if the decedent has left a will or testament, upon such testament being established under the lex domicilii, it will usually be confirmed under the jurisdiction where the property is found. And the title of the executor, as well as the disposition of the property therein appointed and directed will be recognized there. But this confirmation must take place and be had in accordance with the laws of the rei sitæ before even an executor under such testament can intermeddle with the property. But in cases of intestacy there must be a grant of administration in such jurisdiction where property is found; it being well settled that the grant of no state, not even the grant of the state of domicile, can extend beyond the territory of the government which grants it. Nor can it invest the administrator with title to any movable property, except to such as may be found within its limits. * * * These are the general principles applicable to executors and administrators in cases like this. Wms. on Ex'rs, vol. 1, p. 320, and cases there cited, notes 321, 322; Story's Confl. of L., §§ 512, 524."

[1] Regardless of this general rule, we are of opinion, in view of article 3235, that the domiciliary administrator takes no title to personal property of a nonresident having its situs in this state, so long as such property remains subject to the jurisdiction of our courts. This article provides in substance that all of the property of an intestate shall vest immediately in the heirs at law of the deceased subject in their hands to the payments of the debts of the intestate,

but upon the issuance of letters of administration it becomes the duty of the administrator to recover possession of and hold such estate in trust to be disposed of according to law. Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931.

[2, 3] It is a universal rule recognized in this state that, as a matter of comity, the laws of the domicile of the intestate will control in the succession of movable or personal property of his estate. In aid of the distribution of personal property of a deceased nonresident according to the law of his last residence, our courts will, in a proper case, order the local administrator to deliver the residue, after the estate has been administered upon in accordance with our local laws, over to the domiciliary administrator. Simpson v. Knox, 1 Posey Unrep. Cas. 569. To the extent that he is entitled to receive the assets after administration here, his title is recognized. But he will not be permitted to intermeddle while the courts of this state are exercising their jurisdiction.

[4] The state reserves to itself the right to control the procedure in the handling of the assets of a deceased nonresident, unhampered by foreign laws. The title cast upon the heirs is not to be divested by the assertion of title by an invading foreign administrator, much less by the mere fact of his appointment. To yield in this respect would in effect nullify the statute—an intolerable consequence not to be countenanced. Murphy v. Crouse, 135 Cal. 14, 66 Pac. 971, 87 Am. St. Rep. 90; Cureton v. Mills, 13 S. C. 409, 36 Am. Rep. 700; Story, Confl. of L. par. 512.

The Supreme Court of California in Murphy v. Crouse had the identical question presented for decision. Under the California statute, as in ours, the title to personal property vested immediately in the heirs. The court said:

"The respondent contends that title to personal property, wherever situated, is in the domiciliary executor, and that he has the absolute right to dispose of the same. This is the common-law doctrine, in pursuance of which it has been said that title to personalty derived from the executor is good the world over. The rule never prevailed in this state. Here both real and personal property descend directly to the heir or to the beneficiary named in the will, with a qualified right in the personal representative, who holds it, for the purposes of administration, more like a receiver than like a common-law executor. The title is not in him, nor has he the power of disposal, save by order of the court.

"And even at common law, where an ancillary administrator has been appointed in a foreign jurisdiction, the title to personal property which has its situs in such foreign country is in the ancillary administrator. 13 Am. & Eng. Ency. of Law (2d Ed.) p. 931, note and authorities. This must necessarily be so. There cannot be two independent administrations of the same property, nor could it be tolerated that the domiciliary executor should be able practically to nullify the administration in a foreign country by assigning the personal property there situated.

"* * * The power of a domiciliary executor to assign personal property which has its situs in another jurisdiction results from the common-law rule that such assets descend to the personal representative, and not to the heir. That doctrine does not, and never did, prevail here. Beckett v. Selover, 7 Cal. 215, 68 Am. Dec. 237; Haynes v. Meeks, 10 Cal. 120, 70 Am. Dec. 703; Updegraff v. Trask, 18 Cal. 459; Meeks v. Hahn, 20 Cal. 627; Jahns v. Nolting, 29 Cal. 510; Estate of Woodworth, 31 Cal. 619; Chapman v. Hollister, 42 Cal. 463."

The Supreme Court of South Carolina in Cureton v. Mills, supra, in commenting upon one of its former decisions said:

"Carmichael v. Ray, 1 Rich. 116. The administrator of an intestate, domiciled in South Carolina, sought to recover, upon his title as administrator, personal property of his intestate that was situated in North Carolina at his death. It was held that the South Carolina administrator acquired no title under his letters of administration to property of the intestate beyond the territorial jurisdiction of this state. This case may seem to militate against the conclusions, to the support of which it is cited, but that is apparent merely, and not real. It is one thing to say that the scope of administration is general and extends to all assets of the intestate wherever situated, and another to say that, under the circumstances of its location, his title can not be asserted over a particular chattel that appertained to his intestate's estate. It is obvious that the conclusion of the court was correct. The defendant claimed the property under the operation of the laws of North Carolina during the time that the property was subjected to that jurisdiction. It was clearly competent for the laws of that state, operating upon a subject of property subjected to them, to create a right of ownership that would be respected everywhere. To assert title in the administrator, under such circumstances, would be equivalent to denying to the laws of North Carolina that force which is everywhere accredited to the laws of a sovereign state over all persons and property subjected to them."

Upon the question of the title of a foreign administrator Mr. Story in his work on Conflict of Laws, par. 512, thus states the rule:

"In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicile of the deceased, it is to be considered that that title cannot de jure extend, as a matter of right, beyond the territory of the government which grants it, and the movable property therein. (a) As to movable property situated in foreign countries, the title, if acknowledged at all, is acknowledged ex comitate; and of course it is subject to be controlled or modified, as every nation may think proper, with reference to its own institutions, and its own policy, and the rights of its own subjects."

[5] The existence of assets in Texas would have given the Texas courts jurisdiction over such assets had an administration been necessary, and this without regard to the existence or nonexistence of a domiciliary representative administrator. In the event of the necessity for an administration there would be no legal objections to the foreign administration coming into this state and taking out ancillary letters, provided that no administrator had been appointed here, or unless a prior unwaived right to appointment intervened to prevent it. In such a case he would become a representative of the Texas court, as would any other person, but with no added powers because of his domiciliary appointment. He would simply take possession of the property, as any administrator appointed here is authorized to do in virtue of article 3235, but would be vested with no title thereto.

[6] It is idle to contend that the appointment vel non of a domiciliary representative in any wise affects the appeal of plaintiffs in error seeking to have the judgment reviewed. The foreign administrator cannot sue or be sued in the courts of Texas. He is neither a necessary nor proper party to the suit. The question is, therefore, essentially one of procedure involving the application of our local laws to the handling of the estate of a deceased nonresident, situated in this state, and does not involve the ultimate title to the property.

As there was no necessity for an administration in Texas, the policy of the law requires that all the legal heirs of the deceased be substituted in all cases in which the deceased would have been a necessary or proper party.

This seems to have been done in this case. The Court of Civil Appeals found that no administration upon the estate of Mrs. Spivey was necessary, and that all her legal heirs were named as defendants in error in the petition for writ of error and as obligees in the bond. As her heirs, they were under the circumstances necessary parties to the writ, and rightly named as obligees in the bond. As there was no necessity for an administration they became parties adversely interested in the judgment within the purview of article 2088, which provides that the petition for writ of error shall state the names of the parties adversely interested. Without being named as defendants in error in the petition and as obligees in the bond, no jurisdiction would have been conferred upon the Court of Civil Appeals. The law will not, when the record is regular and fair upon its face, inquire into the reasons prompting the compliance with the law by which jurisdiction is conferred upon an appellate court. A compliance with the law confers jurisdiction whether done purposely or by a mere coincidence as in this case.

[7] As the requirements of the statute with reference to conferring jurisdiction were complied with long before the Georgia administrator was appointed, his appointment cannot operate to oust the court of jurisdiction regularly and legally conferred.

[8] It is contended, however, that the situs of the judgment followed the residence of Mrs. Spivey, and that, as she was a resident of Georgia at the time of her decease, the title to the judgment vested in virtue of the Georgia statute in the Georgia administrator, and not in her heirs, and that the courts of Texas are without jurisdiction over it.

It is a general rule of law that the movable or personal property follows the residence of the owner; but with the exception of two cases hereinafter mentioned, we have not been able to find any authority which holds that a judgment debt comes within this class. Upon this particular species of property the authorities in this country and in England are almost unanimous to the effect that judgment debts are bona notabilia, having their situs at the residence of the debtor. St. L. S. W. Ry. Co. v. Smitha (Tex. Civ. App.) 190 S. W. 237; Strong v. White, 19 Conn. 238; Slocum v. Sanford, 2 Conn. 533; Beers v. Shannon, 73 N. Y. 292; Vaughn v. Barret, 5 Vt. 333, 26 Am. Dec. 306; 23 C. J. 1017, par. 47.

In Vaughn v. Barret it is said:

"An idea seems to have been entertained, that the jurisdiction over the debt in this case, followed the person of the creditor. But it is to be observed, that jurisdiction, or the right of administration in respect to debts due a deceased person, never follows the residence of the creditor. They are always bona notabilia, unless they happen to fall within the jurisdiction where he resided. See Bac. Ab., Ex'rs, E. Cro. Eliz. 472. Judgments are bona notabilia where the record is (Ld. Rayd. 855; Carth. 149; 8 Mod. 244; Anon., 6 Geo. II., cited by Selw.); specialties, where they are at the time of the creditor's decease (Lum v. Dodson, cited in Selw. N. P.; Byron v. Byron, Cro. Eliz. 472), and simple contracts where the debtor resides (Carthew, 373; Salk. 37; Ld. Rayd. 562)."

The cases of Angier v. Jones, 28 Tex. Civ. App. 402, 67 S. W. 449 (writ of error denied), and Swancy v. Scott, 9 Humph. (Tenn.) 327, are to the contrary, and support, as we think, the minority rule. In Angier v. Jones the letters of administration were asked for and denied by the probate court of Walker county, Tex., upon the estate of J. F. Foreman, deceased, who died in Morris county, Tex., without any fixed residence. He owned no property except a one-half interest in a judgment rendered in Walker county, Tex. The Court of Civil Appeals held that the situs of the judgment followed the residence of the owner, and therefore, having no fixed residence, Morris county would be the proper county for the founding of administration,

and that the application to the probate court of Walker county was properly denied. That court also held that neither the application nor the evidence showed any necessity for an administration. Because the writ of error was refused does not indicate an approval of the Supreme Court upon the first proposition. But the writ was doubtless denied because of the holding that there was no necessity for administration.

It is our view that, as all the legal heirs of Mrs. Spivey were named as defendants in error in the application for the writ, and as obligees in the supersedeas bond, there was substantial compliance with the statute, and that the naming of these parties as defendants in error and obligees in the bond conferred jurisdiction upon the Court of Civil Appeals, and that that court should have entertained jurisdiction.

We recommend, therefore, that the judgment of the Court of Civil Appeals in dismissing the application for writ of error be reversed, and that the cause be remanded to the Court of Civil Appeals, with directions to set aside its order dismissing the cause, and to entertain jurisdiction of the cause.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and cause remanded to the Court of Civil Appeals, with directions to set aside its order dismissing the cause, and to entertain jurisdiction of the cause.

---

### WYATT v. STATE.   (No. 6750.)

(Court of Criminal Appeals of Texas. March 22, 1922.)

Criminal law ⚷═14—Prosecution for unlawful possession of liquor dismissed where after conviction statute was amended.

Prosecution for unlawful possession of liquor not alleged to have been for purpose of sale will be dismissed where amendment of statute requiring possession to have been for such purpose was made subsequent to conviction.

Appeal from District Court, Newton County; V. H. Stark, Judge.

John Wyatt was convicted of the unlawful possession of intoxicating liquor, and appeals. Reversed, and prosecution ordered dismissed.

Wightman & Forse, of Newton, and G. E. Richardson, of Jasper, for appellant.

R. G. Storey, Asst. Atty. Gen., for the State.

MORROW, P. J. The conviction is for the unlawful possession of intoxicating liquor, and was had before the amendment of the statute denouncing that offense. The statute so modified the law as to limit the offense to the possession of intoxicating liquor for the purpose of sale.

The indictment, as drawn, does not contain this limitation, and therefore will not support the conviction. See Francis v. State (Tex. Cr. App.) 235 S. W. 580, and Ex parte Mitchum (Tex. Cr. App., No. 6772) 237 S. W. 936, not yet [officially] reported.

The judgment is reversed, and the prosecution ordered dismissed.

---

### ROBERTS v. STATE.   (No. 6787.)

(Court of Criminal Appeals of Texas. March 15, 1922.)

Intoxicating liquors ⚷═202—Indictment charging possession must allege possession to have been for purpose of sale.

Indictment, charging unlawful possession of intoxicating liquor, must allege possession to have been for the purpose of sale under amendment of the Prohibition Law by Acts 37th Leg. (1921) 1st Called Sess. c. 61, making possession punishable only when had for the purpose of sale.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

B. L. Roberts was convicted of possessing intoxicating liquor, and he appeals. Judgment reversed, and prosecution dismissed.

A. E. Masterson, of Angleton, for appellant.

R. G. Storey, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the district court of Brazoria county of the offense of possessing intoxicating liquor, and his punishment fixed at one year in the penitentiary.

The indictment herein contains three counts, one for manufacturing liquor, one for possessing equipment for such manufacture, and the other for the unlawful possession of such liquor. The verdict and judgment was for such unlawful possession. The law (Acts 36th Leg. 2d Called Sess. c. 78) having been so amended at the First Called Session in 1921 of the Thirty-Seventh Legislature (chapter 61) as to make the possession of intoxicating liquor punishable only· when had for purposes of sale, we have uniformly held that an indictment, charging such possession for any other purpose, or which fails to charge that such possession was for purpose of sale, was insufficient in law. The indictment in the instant case failing to so charge, it becomes necessary for us to reverse this cause and direct a dismissal of the prosecution; and it is so ordered.

---