[S. F. No. 2783. Department Two.—December 6, 1901.]

## S. G. MURPHY, Respondent, v. WARREN M. CROUSE, Administrator, etc., Appellant, and FIRST NATIONAL BANK OF SAN FRANCISCO, Co-Defendant.

ESTATES OF DECEASED PERSONS—ANCILLARY ADMINISTRATION—POWER OF FOREIGN EXECUTOR—SALE OF STOCK IN NATIONAL BANK.—A foreign executor, appointed at the place of the domicile of a deceased person who died in another state, has no power as against an administrator with the will annexed, appointed in the ancillary administration of his property situated in this state, to sell and assign certificates of stock in a national bank located in this state, notwithstanding the certificates of the stock were in the possession of the deceased and came into the hands of the foreign executor.

ID.—POWER OF EXECUTOR TO ASSIGN PERSONAL PROPERTY—COMMON-LAW RULES—SUCCESSION—LAW OF CALIFORNIA.—The common-law rule that a domiciliary executor has power to assign the personal property of the decedent, wherever situated, is grounded in the common-law rule that the title to such property passes to the executor,

and not to the heir. These rules have never prevailed in this state, where all property, real and personal, descends to the heir, subject only to the qualified right of the personal representative to hold it for the purposes of administration.

ID.—SITUS OF PERSONAL PROPERTY—TITLE IN ANCILLARY ADMINISTRATOR—CONFLICT OF ADMINISTRATIONS.—Even at common law, where an ancillary administrator has been appointed in a foreign jurisdiction, the title to personal property which has its *situs* in such jurisdiction is in the ancillary administrator. There cannot be two independent administrations of the same property, and the domiciliary executor cannot nullify the ancillary administration in a foreign country by assigning personal property there situated.

ID.—SITUS OF CORPORATE STOCK—CERTIFICATES—PLACE OF ADMINISTRATION.—Certificates of stock in a corporation are only evidence of contract rights against the corporation, to be enforced, as a rule, in the state where the corporation is, and prove a property right in such state, and, for the purpose of administration, constitute property situated in such state, to be administered according to its legal policy, and can only be there reached by the creditors of the deceased owner of the stock.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to dissolve an injunction to restrain the sale of shares of stock by an administrator. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Withington & Carter, and J. P. Langhorne, for Appellant.

W. L. Pierce, for Respondent.

Lloyd & Wood, for First National Bank of San Francisco, Defendant.

TEMPLE, J.—This action was brought to compel the corporate defendant to cause to be transferred to plaintiff one hundred and ten shares of its capital stock, which plaintiff claims to have purchased from the executor of Woodward, who was appointed as such in Minnesota, where the testator was a resident at the time of his death. Woodward died testate, February 3, 1899, and George W. Yates, who was named in the will as executor, was appointed and qualified, March 6, 1899, and appellant was, on the twenty-sixth day of April, 1899, duly appointed administrator with the will an-

nexed, by the superior court of San Diego County, in this state.

Woodward owned the stock in question at the time of his death, and had in his possession the certificate of his shares. He died in Minnesota, and the certificate passed regularly into the possession of his executor. The plaintiff then was, and still is, president and manager of the defendant corporation, and before his attempted purchase of the shares of stock from Yates was well aware of the appointment of the ancillary administrator, and had caused a dividend upon the stock to be paid to him as such administrator. Indeed, before any propositions had been considered by him in regard to a purchase, he informed Yates or his agent that the sale, if made, must be through Crouse, the California administrator.

In August, 1899, one Naegele, president of the Germania Bank of Minneapolis, wrote to Murphy, the plaintiff, informing him that he had one hundred and ten shares of stock to sell, and inquiring as to price. Further correspondence took place, and on the twenty-eighth day of August, 1899, the plaintiff informed Naegele that the sale must be made through the California administrator, but he would give for the stock $220 net. Naegele, on receipt of the letter, wired Murphy to raise offer two points, to cover his commission, and said: "Will close the sale and mail draft stock attached to your bank to-day." Murphy replied: "Accept your offer. Take stock $222 deliver here." The certificate of stock, with draft, addressed to the bank, arrived about September 5th, when Murphy asked Crouse to consent to the transfer, which Crouse declined to do. On the contrary, Crouse demanded the delivery of the certificate to him and the payment of certain dividends. This demand Murphy, as president, complied with, but against his individual protest that the stock belonged to him.

In the mean time, and before the certificates of stock were turned over to Crouse, Naegele had sent a peremptory order to the bank to return to his bank the certificates of stock or to pay the draft, and Murphy made a tender of the money to his cashier and demanded the stock, while, as president of the bank, he refused to issue the stock or to accept the money. By taking advantage of the double capacity in which he acted,

it is supposed that Murphy was able to preserve his rights under the assumed contract of sale without risking his money upon the proposition. But if he insisted that he had made a purchase, I see no reason why he should not have paid the money. He was not buying the stock from the bank, nor was it made a condition of the sale that the bank would issue the stock. The bank was no further the agent of Naegele than to collect the money, and, upon its payment, to deliver the certificate.

It may be further noted that Yates subsequently repudiated the action of Naegele, and rescinded, so far as he was able, the attempted sale, and the probate court of Hennepin County, Minnesota, formally assigned the matter to the ancillary administrator. I do not regard this order as of any importance.

Assuming that Murphy had a contract of purchase which would be binding upon the domiciliary executor, the case is one of conflict of jurisdictions.

The respondent contends that title to personal property, wherever situated, is in the domiciliary executor, and that he has the absolute right to dispose of the same. This is the common-law doctrine, in pursuance of which it has been said that title to personalty derived from the executor is good the world over. The rule never prevailed in this state. Here both real and personal property descend directly to the heir or to the beneficiary named in the will, with a qualified right in the personal representative, who holds it, for the purposes of administration, more like a receiver than like a common-law executor. The title is not in him, nor has he the power of disposal, save by order of the court.

And even at common law, where an ancillary administrator has been appointed in a foreign jurisdiction, the title to personal property which has its *situs* in such foreign country is in the ancillary administrator. (13 Am. & Eng. Ency. of Law, 2d ed., p. 931, note and authorities.) This must necessarily be so. There cannot be two independent administrations of the same property, nor could it be tolerated that the domiciliary executor should be able practically to nullify the administration in a foreign country by assigning the personal property there situated.

No case so holds, and certainly none in this state. *McCully*

v. *Cooper,* 114 Cal. 258,[1] is to the contrary. In that case a
domiciliary administrator, resident in Indiana, was contending
with an ancillary administrator in this state for a certificate
of deposit issued by a bank in San Diego to the decedent in his
lifetime, he being a resident of Indiana. It was held that, for
the purpose of administration, the debt had its *situs* where
the debtor resides, and since administration had been granted
in this state, the domiciliary administration could not dispose
of the asset. In the opinion the learned commissioner stated
seven propositions which, he said, bore "more or less upon the
question." The seventh was entirely *obiter,* and its correct-
ness, as applied to this state, is questionable. The power of a
domiciliary executor to assign personal property which has its
*situs* in another jurisdiction results from the common-law
rule that such assets descend to the personal representative,
and not to the heir. That doctrine does not, and never did,
prevail here. (*Beckett* v. *Selover,* 7 Cal. 215;[2] *Haynes* v.
*Meeks,* 10 Cal. 120;[3] *Updegraff* v. *Trask,* 18 Cal. 459; *Meeks* v.
*Hahn,* 20 Cal. 627; *Jahns* v. *Nolting,* 29 Cal. 510; *Estate of
Woodworth,* 31 Cal. 619; *Chapman* v. *Hollister,* 42 Cal. 463.)

The matter was before the court in *Brown* v. *San Francisco
Gas Co.,* 58 Cal. 426. It was there held, that a certificate of
stock in a California corporation which had been issued to a
resident of New York, who died there testate, having in pos-
session the certificate, could be assigned by the executor in the
mode authorized by the probate law of that state, and that the
assignee could compel a transfer on the books of the corpora-
tion here. There was no ancillary administration here. The
decision is supported by a line of cases in other states.
Whether our peculiar statutes necessitate a different rule in
this state was not considered, but, at all events, it was not a
decision that such assignment can be made in cases where
ancillary administration has been granted in this State.

And this brings us to the principal contention of the re-
spondent. He contends that shares of stock, negotiable notes,
and all choses in action, evidenced by writing, have their *situs*
where the owner resides, and when they are in the physical
possession of the owner at the time of his death, and pass into
the physical possession of the representative, he is the owner,

[1] 55 Am. St. Rep. 66.          [3] 70 Am. Dec. 703.

[2] 68 Am. Dec. 237.

and may transfer them, and such title will be recognized everywhere. Such rule is recognized in ˜some states, and, by comity, the personal representative has been allowed to collect debts in a foreign jurisdiction when the debtors pay voluntarily, but he cannot sue as executor in such foreign country. No country will allow a foreign court to exercise its jurisdiction within its borders. Perhaps, by comity, such assignment of a chose in action would be permitted in this state when there is no local administration. But I do not see how an assignment by a foreign executor would be held good here, where we do not admit that the executor himself was˜vested with title.

It is true, however, that for most purposes a chose in action adheres to the person of the owner, but for the purpose of founding administration this is not true. For such purpose the *situs* is where the debtor resides. For this exception there are at least two good reasons. It may be necessary to bring an action upon notes to enforce payment, and this a foreign administration or executor cannot do. As to other personal property, it may be necessary to have the aid of the law for its recovery and protection.

But the main reason, no doubt, why local administration is provided for is for the protection of local creditors and claimants. No state should allow property to be taken from its borders until debts due its own citizens have been satisfied. Our statute provides for administration upon the estate of any non-resident who has died leaving property in this state. To obtain such letters it is not necessary to show that there are creditors or that the property requires care to preserve it. And a mode is provided for ascertaining whether there are creditors. The administration, though called ancillary, to distinguish it from the administration of the last residence of the decedent, is wholly independent of it. Only the surplus remaining after full administration can be remitted to the domiciliary representative for distribution. In other words, our laws provide for the *administration* of the estates of all non-residents who have died leaving property here, real or personal, but, as to personalty, the distribution is to be made at, or, at least, according to the law of, the domicile.

The . general propositions above stated are supported by numerous cases, among them the following, some of which

involved the question as to the *situs* of corporate stock: *Mc-Cully* v. *Cooper,* 114 Cal. 258;[1] *Wyman* v. *Halstead,* 109 U. S. 654; *Winter* v. *London,* 99 Ala. 263; *Luce* v. *Manchester R. R. Co.,* 63 N. H. 588; *Kohler* v. *Knapp,* 1 Bradf. 241. See, also, Story on Conflict of Laws, sec. 512; Minôr on Conflict of Laws, sec. 121 et seq.

Respondent also contends that, conceding that choses in action, generally, for the purposes of administration, have their *situs* where the debtor lives, or, rather, where the obligation created by them is to be enforced, a different rule will apply to certificates of stock. For many purposes, it is said, a certificate of stock is itself a personal chattel or tangible property, and extracts showing this are given from Morawetz and others. Precisely in the same way promissory notes are sometimes regarded as in themselves constituting tangible property, and, indeed, Morawetz, in the extracts given, makes the comparison. A transfer of the certificate transfers the title to the shares, as between the parties. A certificate of stock is, after all, only the evidence of certain contract rights against a corporation, enforceable only, as a rule, where the corporation is. It is evidence of a right to property in this state, which the same legal policy which forbids the removal of other assets of decedents, so long as there may be demands against the former owner unsatisfied, would require to be administered here. Stocks are usually classed as choses in action, but whether they are such or not, they constitute property of a decedent actually in this state, and can be reached here, and here only, by creditors.

Many other points are discussed by counsel, but under the views here expressed it is not necessary to consider them.

This appeal was taken from an order refusing to dissolve a temporary injunction restraining the defendant Crouse from selling and the corporation from transferring on its books the shares of stock in controversy.

For the reasons above given it is ordered that the order be reversed and the injunction dissolved.

McFarland, J., and Henshaw, J., concurred.

---

[1] 55 Am. St. Rep. 66.