IN THE MATTER OF THE ESTATE OF CALVIN PAIGE, DECEASED.

[No. 7783 (N. S.); April 28, 1910.]

**Inheritance Tax—Nature and Effect.**—The inheritance tax is not a tax in the ordinary sense of the word, but is a charge imposed by law for the privilege of inheriting or taking by will; since this is a right only by statutory enactment and is entirely under the control of the legislature.

**Inheritance Tax—Right of Legislature to Impose.**—Each state has the right, unless prohibited by its constitution, to make a charge for the privilege of receiving by will or by inheritance any property within its borders.

**Inheritance Tax—Situs of Corporate Stock.**—While for most purposes a chose in action adheres to the person of its owner, for the purpose of administration it does not. For such purpose the situs is where the debtor resides. Stocks of California corporations constitute property of a decedent actually in this state.

Hartley F. Peart and Earl H. Pier, for treasurer.

Charles S. Wheeler and Nathan M. Moran, for executors.

John M. Burnett, inheritance tax appraiser.

COFFEY, J. Calvin Paige died on the nineteenth day of March, 1909, in the city of New York, state of New York. He left a last will and testament which was duly proved and allowed and admitted to probate in the surrogate's court of the county of New York, and letters testamentary thereon were is-

sued to Louis F. Monteagle, Timothy Paige and George M. Wright, named in said will as executors thereof, who qualified and entered upon the discharge of the duties of their trust in New York.

Louis F. Monteagle, Timothy Paige and George M. Wright produced and filed in this court a copy of said will and the probate thereof, duly authenticated by the said surrogate's court. Thereafter, on due proceedings had, this court by its order given and made on the twenty-fifth day of May, 1909, admitted said will to probate, and letters testamentary were duly issued to said Monteagle, Paige and Wright, and on said last named day they duly qualified as such executors in the state of California, and entered upon the discharge of the duties of their trust.

Calvin Paige was a resident of, and actually domiciled in, the city and county and state of New York, at the time of his death.

Testator, by his last will and testament, bequeathed legacies in money to divers legatees, which said legacies amount to the sum of five hundred and seventy-five thousand ($575,000) in the aggregate, and then devised and bequeathed the rest and residue of his estate to his niece, Lydia Paige Monteagle, and his nephew, Timothy Paige, in equal shares.

Testator left a large estate in the state of New York, under the jurisdiction of the said surrogate's court. Said estate exceeds the sum of six millions of dollars in value; the administration of said estate in New York has not been closed, and all the money legacies will be paid through the said surrogate's court in New York. All the estate of said testator in California will go to said Lydia Paige Monteagle and Timothy Paige, under the residuary clause in said will.

The estate of said decedent within the state of California and the value thereof at the time of his death were as follows:

| Estate. | Bonds of Corporations. | Value. |
|---|---|---|
| 10 | Bay Counties Power Co. first mortgage.... | $10,200.00 |
| 5 | Bay Counties Power Co. second mortgage... | 5,000.00 |
| 65 | California Gas & Elec. etc., mortgage...... | 63,700.00 |
| 20 | Colusa and Lake R. B.................... | 20,000.00 |
| 44 | Contra Costa Water Co. issue of 1894...... | 44,880.00 |

50 Contra Costa Water Co. general mortgage.. 45,000.00
40 First Federal Trust Co. first mortgage.... 40,000.00
75 Los Angeles R. R. Co. first mortgage....... 81,750.00
5 Oakland Gas L. & H. Co. mortgage........ 5,150.00
10 Oakland Transit Co. first cons............. 11,300.00
20 Oakland Transit Co. consolidated mortgage. 20,600.00
5 Oceanic Steamship Co. first mortgage...... 2,500.00
25 Oakland Traction Co. general cons......... 33,250.00
20 Pacific Tel. & Tel. Co. first mortgage....... 20,000.00
10 Petaluma & Santa Rosa Ry. Co............ 9,500.00
114 Pacific Gas & Electric Co. general mortgage 108,370.00
50 People's Water Co. general mortgage...... 35,000.00
10 Pacific Light and Power Co. first mortgage.. 10,200.00
10 S. F. Oak. & San Jose Ry. Co. first mortgage 10,600.00
10 Spring Valley Water Co. general mortgage. 9,000.00
9 San Francisco and North Pac. Ry. general
　　mortgage ............................ 9,540.00
20 Sunset Tel. & Tel. Co. general mortgage.... 10,500.00
50 S. F. Gas & Electric Co. general mortgage.. 45,000.00
10 S. F. & San Joaquin V. Ry. first mortgage.. 11,500.00
15 United Gas & Elec. Co. first mortgage...... 14,850.00
55 Valley Counties Power Co. first mortgage.. 54,450.00

Total value bonds.......................$731,840.00

## STOCKS OF CORPORATIONS.

200 shares American Bank of San Francisco... $26,000.00
132 shares Bank of Willows.................. 23,100.00
65 shares Bank of America (Los Angeles), no
　　value ..............................
407 shares Colusa Co. Bank.................. 52,910.00
50 shares Cedar River Co., no value..........
4 shares Colusa and Lake Co. R. R. Co....... 40.00
170 shares Cal. Horse S. Co., no value..........
75 shares Ely Bond & M. Co., no value........
33 shares National Bank of Stockton........ 6,600.00
582 shares First National Bank of San Francisco 145,500.00
1500 shares Giant Powder Co. cons............. 111,000.00
335 shares Humboldt Co. Bank (Eureka)...... 45,225.00
50 shares Home Savings Bank (Eureka)...... 3,500.00

|  |  |
|---|---|
| 75 shares Meadow Valley Ex. M. Co., no value. | ———— |
| 100 shares Pioche West Ex. M. Co., no value.... | ———— |
| 801 Pacific T. & T. Co. (preferred)........... | 74,493.00 |
| 801 shares Pacific T. & T. Co. (common)....... | 19,224.00 |
| 71 shares Pacific Gas & E. Co.............. | 6,887.00 |
| 644 shares Risdon Iron, etc., Works.......... | 12,880.00 |
| 145 shares Security Savings Bank............. | 47,125.00 |
| 1100 shares S. Feather R. W., etc., Co.......... | 500.00 |
| 150 shares Spring Mountain M. Co., no value... | ———— |
| 4325 shares San Joaquin & R. R. etc. Co........ | 17,292.00 |
| 8 shares Seaboard Bank.................... | 800.00 |
| 600 shares Spring Valley M., etc., Co., no value. | ———— |
| 2650 shares Spring Valley Water Co........... | 87,450.00 |
| 250 Wells Fargo Nev. Bank.................. | 49,000.00 |

Total value stocks...................$729,526.00

| Notes. | Value. |
|---|---|
| Analy Savings Bank (Sebastopol).............. | $20,000.00 |
| Contra Costa Water Co....................... | 50,000.00 |
| Cal. Wine Association....................... | 20,000.00 |
| San Francisco Gas & E. Co.................... | 50,000.00 |
| Santa Rosa Natl. Bank (bal.)................. | 8,000.00 |
| James A. White............................ | 500.00 |
| James Treadwell ($27,041.66) no value......... | ———— |

Total value notes ...................$148,500.00

Due from Colusa County Bank on loan.......... 30,000.00

Cash on deposit in banks in the city and County of San Francisco, State of California, at death.. 49,330.77

All of the foregoing mentioned bonds, stocks and notes were, at the death of the testator, in the city and county of San Francisco, state of California, in a safe deposit box rented by the decedent, and were taken by the executors in California into their possession after his death. All of said notes, except that of James A. White and James Treadwell have been collected by the executors since their qualification, and the loan of $30,000 to the Colusa County Bank has also been collected by them.

All the corporations hereinbefore mentioned, the bonds, stocks and notes of which are hereinbefore set forth, are corporations duly organized and existing under the laws of the state of California.

RECAPITULATION OF VALUE OF ESTATE.

| | |
|---|---|
| Value of bonds.............................. | $731,840.00 |
| Value of stocks.............................. | 729,526.00 |
| Value of notes............................... | 148,500.00 |
| Value of loan to Contra Costa Co. Bank......... | 30,000.00 |
| Cash in bank at death........................ | 49,330.77 |

Total value of estate in California.... $1,689,196.77

The most important question in this proceeding is whether the state of California is entitled to any inheritance tax whatever on the property of the decedent which will be distributed by this court. For convenience it may be well to summarize the facts bearing on the question.

Calvin Paige died while a resident of, and domiciled in, the city and county and state of New York. His will, which was executed in New York was admitted to probate by the proper court in the county of his residence and domicile, and letters testamentary were duly issued to the executors named in the will. An exemplified copy of the will was duly admitted to probate and letters testamentary issued to the same executors.

Mr. Paige left a large amount of personal property consisting of bonds, stocks and notes of corporations organized and existing under the laws of California (designated herein as California corporations), a loan due from a California corporation, money in banks in San Francisco, and notes of individuals, made in California by residents of this State. These bonds, stocks, and notes were, at the death of Mr. Paige, in a safe deposit box in San Francisco, rented by him, and under his control, either personally or through his agent here, and have never been physically out of the state. The entire property was taken into possession by the executors under their appointment by this court, and the letters issued to them here. The notes (with two exceptions) and the loan have been collected by them in this state.

It will be observed that the inheritance tax is not a tax in the ordinary sense, but is a charge imposed by law for the privilege or inheriting or taking by will: In re Wilmerding, 117 Cal. 285.

And it will be observed also that the right of inheritance, or to take under a will, is a matter of statutory enactment, and entirely within the control of the legislature. Each state has the right, unless prohibited by its constitution, to make a charge for the privilege of receiving by will or by inheritance any property within its borders: State v. Dalrymple, 70 Md. 295, 17 Atl. 82, 3 L. R. A. 372; Callahan v. Woodbridge, 171 Mass. 595, 51 N. E. 176.

It will be noted that the administration of the estate of Mr. Paige in this state, though called ancillary for the purpose of distinguishing it from the administration of the last residence, namely, New York, is wholly independent of it. Our law provides for the administration of the estates of all nonresidents who have left property here, real or personal: Murphy v. Crouse, 135 Cal. 19, 87 Am. St. Rep. 90, 66 Pac. 971.

Section 1 of the inheritance tax law provides: "All property which shall pass by will or by the intestate laws of this state from any person who may die seised or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of his death, which property, or any part thereof, shall be within this state, . . . shall be, and is subject to a tax hereinafter provided for," etc.

That the property to be distributed by this court passes under the will of Mr. Paige is clear. That this court has jurisdiction of the estate here is beyond question, and that the California executors appointed by it are to administer the estate under its directions, is settled by Murphy v. Crouse, supra. It follows that the legatees derived their title to the property in California by virtue of the decree of distribution made by this court.

Then only remains the question whether this property was "within this state" at the death of the testator.

The language of section 1 of the inheritance tax law is general and sweeping. "All property" is comprehensive. No exception is made of real or personal property belonging to a

nonresident decedent. Certain exemptions are made in section 4 of the law, but as they do not include personal property of nonresident decedents the conclusion would be, on well-settled principles of construction, that it was the intention of the legislature that such propery is subject to the tax. On the face of the statute it seems that the tax in this proceeding is due, were it not for the maxim of "mobilia personam sequuntur."

Universal succession is the artificial continuation of a deceased person by an executor, heir or the like, as far as the succession to rights and obligations is concerned. It is a fiction, which gives whatever meaning it has to the saying "mobilia sequuntur personam," but being a fiction, it must not obscure the facts, when the facts become important, and its recognition is limited by the policy of the local law: Blackstone v. Miller, 188 U. S. 204, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277.

The old rule expressed in this maxim is yielding more and more to the lex situs, and where justice requires that the actual situs of the thing should be examined, the fiction yields: Pullman P. Car etc. v. Pennsylvania, 141 U. S. 22, 35 L. Ed. 613.

When logic and the policy of the law of the state conflict with a fiction (mobilia, etc.) due to historical tradition, the fiction must yield: Blackstone v. Miller, 188 U. S. 206, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277.

The reason given in the cases why the state can impose a succession tax on personal property within its borders, irrespective of the residence of the owner, is that the property is protected by the law of the state; that the state gives the right to receive it, and the state can impose a charge on it in return.

The persons claiming right to succession to property in Massachusetts under nonresident owners must hold their right subject to the prior right of the state "to have the property administered here, in order that taxes may be paid upon the succession": Greves v. Shaw, 173 Mass. 210, 53 N. E. 372.

So here, the prior right of the state of California "to have the property administered here in order that taxes may be paid upon this succession" must prevail over the fiction.

It is held in Murphy v. Crouse, supra, that while for most purposes a chose in action adheres to the person of the owner, that for the purpose of administration that is not true. For such purpose the situs is where the debtor resides. Stocks of California corporations constitute property of a decedent actually in this state. Therefore, the stocks, bonds and notes in this state, owned by Mr. Paige, have their situs in California. The fiction must yield to the facts and the law.

In State v. Dalrymple, 70 Md. 294, 17 Atl. 82, 3 L. R. A. 372, it was held that personal property in Maryland belonging to the estate of William H. Dalrymple, a resident of California, was taxable. (The will of the decedent was in controversy in Estate of Dalrymple, 67 Cal. 444, 7 Pac. 906.)

The statute of New York is like ours, and under it it was held that money in banks in New York belonging to a nonresident decedent were taxable: Matter of Houdayer, 150 N. Y. 37, 55 Am. St. Rep. 642, 44 N. E. 718, 34 L. R. A. 235.

. In Blackstone v. Miller, 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277, it was held (affirming the decision of the court of appeals of New York) that personal property in New York belonging to a deceased nonresident was taxable.

In the Matter of Whiting, 150 N. Y. 27, 55 Am. St. Rep. 640, 44 N. E. 715, 34 L. R. A. 232, it was held that stocks of New York corporations belonging to a deceased nonresident were taxable.

In Callaghan v. Woodbridge, 171 Mass. 595, 51 N. E. 176, and in Greves v. Shaw, 173 Mass. 205, 53 N. E. 372, and in Moody v. Shaw, 173 Mass. 375, 53 N. E. 891, it was held that personal property belonging to a deceased nonresident was subject to the tax.

Perhaps the pioneer case in this country on the point was decided in 1854. The supreme court of North Carolina held that personal property belonging to a deceased nonresident was taxable under the inheritance law then in force in that State: Alvany v. Powell, 2 Jones Eq. (55 N. C.) 51.

In the North Carolina case, the court, through Mr. Justice Richmond Munford Pearson, afterward Chief Justice, delivered a learned and luminous exposition of the law. The author of that opinion is described as a lawyer in the best sense

of the word who possessed an analytical mind that enabled him to grasp the salient points in a discussion without touching those extraneous matters which are necessarily present in all legal controversies. He was always guided by logic and reason in solving intricate questions. His logic was faultless and the principles he announced were so clear and well-defined that the members of the bar not only understood the law as he wrote it, but were fully convinced by his manner of statement that his conclusions were correct. These characteristics give value to the clear-cut views which we herein quote from Justice Pearson's opinion.

"After devoting to the question much consideration, we are satisfied that the true principle, both in regard to personal and real estate, is the situs of the property; and that the principle by which a distinction is made between personal and real estate, so that in regard to the former, a construction depending upon the domicile of the owner is adopted, is based upon a fiction, which has no application to 'questions of revenue.' The construction which adopts the situs of the property is first suggested to the mind, and is yielded to at once, because it is based upon a fact; the property is here, it is protected and passes by force of our laws. The construction which adopts the domicile does not suggest itself, and the mind will not entertain it, except after a long argumentation and much ingenious and refined reasoning; because it is based upon a fiction. . . .

"The principle of the domicile, which is based on the fiction that personal property attends the person, and is to be considered as being where the owner has his domicile, is adopted by the comity of nations in reference to the distribution of the personal estate of deceased persons; but it has no application where the rights of creditors are concerned: Story's Conflict of Laws, 354; Moye v. May, 8 Ir. Eq. 43 (N. C.) 131. . . .

"The notion upon which the principle of the domicile is based, that personal property attends the person and is where the owner lives, is a mere fiction, and its very restricted application rests upon the comity of nations; but in collecting debts and taxes, we must proceed upon the fact, and consider

the property as being where it actually is; in other words, the situs of the property must be the governing principle. . . .

"As the property situated here, belonging to a nonresident foreigner, is, after his death, protected and administered by our laws, there is the same reason for enforcing a tax upon it, as upon the property of our own citizens, in similar circumstances, and the statute should be so construed as to include both."

The policy of the law is (as was said of the New York law in the Matter of Whiting, supra) to tax all property passing by will or the intestate laws of the state, except as far as certain exceptions are made in the law itself. As the stocks, bonds and notes were all physically present in the state of California at the time of the death of Mr. Paige; as the stocks, bonds and most of the notes were issued by corporations created by and continuing their existence under the laws of this state and their business and property are "within this state"; as the claims held by decedent here were against debtors residing in this state, as the title of the legatees to the property can only be established by a decree of the courts of this state, and the right to take under the will is given by the laws of this state, the fiction of mobilia personam sequuntur must yield to these facts and the policy of our local law.

It is to be regretted that in cases of this kind an inheritance tax may be imposed on the same property passing under the will or by the intestate laws, by two states, as was said in 188 U. S. 205, 47 L. Ed. 445. 23 Sup. Ct. Rep. 277; but however that may be, the state of California cannot be deprived of her rights by the action of any other state.

The conclusion of the appraiser that the personal property now being administered in this state is liable to the inheritance tax is confirmed by the court.

---

*The Principle Discussed and Applied* in the foregoing case was decided in the Estate of J. M. Douglass, Deceased, November 30, 1904, where an attempt was made by the executors to wrest jurisdiction over the subject matter from this court. For a history of the proceedings that resulted in the collection of the inheritance tax in that case see Estate of Douglass, 4 Cof. Prob. Dec. 345.

*As to the Situs of Corporate Stock* for purposes of inheritance taxation, see Ross on Inheritance Taxation, pp. 246–257.