ISABEL K. DIBBLEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61036. Promulgated February 13, 1934.

*Albert J. Dibblee, Esq.*, for the petitioner.
*H. D. Thomas, Esq.*, for the respondent.

### OPINION.

MATTHEWS: The respondent has determined a deficiency in income tax for the year 1928 in the amount of $1,690.30. Petitioner alleges that respondent erred in determining that the two-year period contemplated by the " Capital Net Gain " provision of section 101 of

the Revenue Act of 1928 commenced to run from the date of distribution to her of certain stocks which she had acquired by general bequest under the will of her deceased mother, and not from the date of her mother's death. The parties have filed a stipulation. from which we summarize the pertinent facts as follows:

Petitioner is an individual, residing at Ross, in Marin County, California. Her mother died testate on March 28, 1926, and in her will disposed of her property, leaving "All my property, real, personal and mixed, of any kind and nature whatsoever, and wherever situate, * * * unto my four children, Lucia Hamilton Kittle Sherman, Isabel Kittle Dibblee, Allen Irving Kittle, and John Casper Kittle, share and share alike." The will was duly probated and the estate distributed under a decree of final distribution dated May 21, 1927, the petitioner receiving one fourth of certain stocks and bonds so distributed from the estate of her mother. Thereafter and on certain dates extending from April 18 to December 18, 1928, petitioner sold some of the securities thus acquired. These sales were made more than two years after the death of her mother, but less than two years after the date of the distribution to the petitioner of the property sold. In her income tax return for 1928 petitioner reported the profit from such sales as capital net gain in the amount of $27,712.33, based on the value of the securities at March 28, 1926. The profit based on fair market value at the time of distribution is $28,441.86. Upon audit of the return the respondent included this latter amount as ordinary income and determined the deficiency in controversy.

Although it is alleged in the petition that respondent erroneously computed income from the sales in question on the basis of the value of the securities sold at the date of their distribution, petitioner has accepted the respondent's computation of profit as in conformity with the provisions of section 113 (a) (5) of the Revenue Act of 1928, as follows:

SEC. 113. (a) (5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. *In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer.* * * * [Italics supplied.]

It is still contended by the petitioner, however, that this profit of $28,441.86 should be treated as capital net gain under the provisions

of section 101 of the Revenue Act of 1928, set out in the margin,[1] on the theory that petitioner acquired the securities in question at the date of her mother's death and that they were held by her for more than two years before they were sold. It is admitted that she did not hold these securities for more than two years after they were distributed to her, but the petitioner insists that the basic date for determining gain, under section 113 (a) (5), *supra*, is not necessarily the basic date for computing the running of the two-year period specified in section 101. Thus the petitioner urges that, although the value of the securities at the date of distribution is the correct basis for determining the amount of the gain from the sale thereof, it is the date of the death of the petitioner's mother which establishes the beginning of the period the securities were held by petitioner.

Petitioner has directed our attention to the laws of California, under which title to personal property transmitted by will vests in the legatee immediately upon the testator's death (secs. 28, 300, and 581 of the Probate Code). Reliance is placed upon the case of *Murphy* v. *Crouse*, 135 Cal. 14, in which the Supreme Court of California held that both real and personal property descend directly to the beneficiary named in the will, with a qualified right in the personal representative who holds the property for purposes of administration, and it is pointed out that an undivided one-fourth interest in the estate of her mother vested in the petitioner in the instant case on March 28, 1926, the date of her mother's death. It does not follow, however, that from the moment of her mother's death the petitioner began holding one fourth of the specific assets of the estate. All of the decedent's property went into the possession of the executors and was chargeable with the expenses of administering the estate and the payment of debts. Clearly the petitioner had no dominion or control over, and could not have sold, any of the particular assets until there had been a division of the estate among herself and the other legatees

---

[1] SEC. 101. (a) *Tax in case of capital net gain.*—In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows : A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

 *       *       *       *       *       *       *

(c) *Definitions.*—For the purposes of this title—

 *       *       *       *       *       *       *

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business)  *   *   *. For the purposes of this definition—

 *       *       o       *       *       *       *

(B) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

and certain specific assets had been delivered over to her. We cannot agree with the petitioner's contention that the issue before us for determination, which involves the taxable gain from the sale of certain securities, is governed by the laws of California with respect to the passing of legal title to property transmitted by will. In our opinion we must look to the provisions of the Federal taxing statutes. We have already shown that, under section 113 (a) (5), it is not the value of the property on the date she acquired legal title thereto, but the value on the date the securities were distributed to the petitioner, which is used as the basis for computing gain. It would be a forced construction of the statute to say that the date of distribution should not also be taken as the starting point for determining the period the securities were held by the petitioner.

The securities in question were sold by the petitioner during the taxable year 1928, between April and December. Petitioner had acquired the securities by general bequest under the will of her deceased mother and they were distributed to the petitioner under a decree of final distribution dated May 21, 1927. Prior to that date the possession of the securities was in the executors of the estate for purposes of administration and not in the petitioner. In view of these facts we conclude that the petitioner had not held the assets, within the meaning of section 101, for a period of two years before they were sold and is, therefore, not entitled to report the profit as capital net gain.

The view which we have taken herein is in accordance with our decision in the case of *Nancy K. McFeely*, 29 B.T.A. 998, which case is not identical upon the facts but presents the same question of law. In that case we held that the profit on the sale of shares of stock distributed to the petitioner on November 3, 1927, and sold by her on March 14, 1929, was not taxable as capital net gain, although the petitioner's donor (her mother) had acquired in 1919 an absolute title to one half of the estate of a deceased husband and the stock in question was received by the petitioner under an assignment to her, dated June 23, 1924, of 10 percent of the donor's one-half interest in the estate. We said:

In our opinion the evidence does not support the contentions of the petitioner. While the shares of stock were in the custody of the executors of the estate of T. H. Given they were not in any proper sense "held" by the petitioner. If the executors by agreement of the parties or otherwise had sold the shares and realized a profit therefrom the profit would unquestionably have been taxable to the estate and not to the beneficiaries. *Anderson* v. *Wilson*, 289 U.S. 20.

It seems clear that if Martha A. Given [the donor] had not assigned any portion of her estate to the petitioner, but had received the 1,000 shares of Radio stock in question on November 3, 1927, and had sold them on March

14, 1929, the profit would have constituted ordinary net income and would have been taxable accordingly, for she would have held them for a period of less than two years at date of sale. Section 113 (a) (5). We can not see that the petitioner stands in any better position than her donor.

The respondent's determination is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

LANSDON, dissenting: I am unable to agree with the prevailing opinion. Under the laws of California, which govern here as to rules of property, it is well established that title to devised property vests in the legatee at the date of the death of the prior owner. Probate Code, secs. 28, 300, 581. In *Murphy* v. *Crouse*, 135 Cal. 14, the Supreme Court of California held that the common law doctrine that the title to personal property passes to the executor and not to the heir has never prevailed in California and that in that state both real and personal property descend directly to the beneficiary named in the will, subject only to the qualified right in the personal representative who holds it for purposes of administration. In *Western Pacific Co.* v. *Godfrey*, 166 Cal. 346, the court held that " The legatee does not derive title from the decree of distribution but from the will, which takes effect immediately upon the death of the testator. The decree of distribution does not create the title. It merely declares that title accrued under the will." This principle was nationalized by the Supreme Court in *Brewster* v. *Gage*, 280 U.S. 327, and has been applied by the Board in many decisions.

The securities sold were a part of the estate of the petitioner's mother at the date of her death. In the light of the authorities above cited it is perfectly clear that an undivided one-fourth interest therein vested in the petitioner at March 28, 1926. I think it immaterial that such interest was not identified or segregated from the corpus of the estate until May 21, 1927, the date of distribution. From the moment of her mother's death, title to one fourth of all the securities left by the decedent vested in the petitioner. The executor or personal representative of the estate held the property only as the agent of the actual owner or of the probate court. His possession was the possession of the heirs. California Civil Code, sec. 1581. His duty is to marshal and conserve the assets of the estate and, under the direction and order of the proper court, distribute them to their real owners. Without the consent of the court he cannot convert a dollar's worth of the assets in his charge into new investments. Subjected to such limitations, it is plain that he holds only for the owners and that his acts are theirs.

In support of his determination the respondent relies on sections 113 (a) (5) and on 101 (c) (8) (B) of the Revenue Act of 1928, which provides that to determine the two year period "there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person." I cannot see the applicability of this provision to the situation here. In my opinion the securities in question were acquired by the petitioner at the date of her mother's death and held by her until the date of the sale, and so, for the purpose of this proceeding, were never held by any other person.

TRAMMELL agrees with this dissent.